**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Jamie Edward Morris, Appellant.

Appellate Case No. 2012-212630

Appeal From Pickens County
D. Garrison Hill, Circuit Court Judge

Unpublished Opinion No. 2014-UP-112
Heard January 15, 2014 – Filed March 12, 2014

**AFFIRMED**

Appellate Defender, Robert M. Pachak, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General John Benjamin Aplin, both of Columbia, for Respondent.

**PER CURIAM:**  Jaime Morris's child died from an overdose of the prescription cough medicine Tussionex.  The State indicted Morris for aiding and abetting homicide by child abuse and his mother, Donna Lynn Phillips, for homicide by

child abuse.  Following a joint trial, the jury found Morris and Phillips guilty as charged.  Morris argues on appeal the trial court erred by denying his motion for a directed verdict because the State failed to present substantial circumstantial evidence of his guilt.  We affirm.

A person is guilty of aiding and abetting homicide by child abuse when he or she "knowingly aids and abets another person to commit child abuse or neglect . . . [that] results in the death of a child."  S.C. Code Ann. § 16-3-85(A)(2) (2003).  We affirm the denial of Morris's directed verdict motion because the State presented substantial circumstantial evidence that Morris (1) knew Phillips gave the child Tussionex, and (2) assisted Phillips in committing the crime.  *See State v. Hepburn*, 406 S.C. 416, __, 753 S.E.2d 402, 409 (2013) (stating when the State presents "substantial circumstantial evidence reasonably tending to prove the guilt of the accused, this Court must affirm the trial court's decision to submit the case to the jury" (citation and internal quotation marks omitted)).

A jury could reasonably conclude Morris had knowledge of Phillips's criminal conduct.  *See State v. Lewis*, 403 S.C. 345, 354, 743 S.E.2d 124, 129 (Ct. App. 2013) ("[T]o be guilty as an aider or abettor, the participant must be chargeable with knowledge of the principal's criminal conduct." (citation omitted)).  The State presented expert medical testimony that Phillips, who had a prescription to Tussionex, administered multiple doses of this medication to the child during the time he was in Morris's custody.  Morris told police he and Phillips "were together the entire weekend," and testified he was with the child "the whole time." Specifically, he stated the child "never left [his] sight for a second," and slept "right beside [Morris]" on the couch, so he "would know if something [had] happen[ed] to [the child]" during the night.  This evidence supports a finding that Morris knew Phillips gave the child Tussionex because he would have observed this occur, either multiple times or, at the very least, once.  *See State v. Smith*, 359 S.C. 481, 491, 597 S.E.2d 888, 894 (Ct. App. 2004) (affirming denial of defendant's directed verdict motion and relying, in part, on evidence that defendant and child's mother were never separated from each other or the child when the child's injuries occurred).  Additionally, Morris testified the child began "breathing funny" around 3:00 p.m. on Sunday, which prompted him to tell the child's mother that same evening she should take him to the doctor because "his breathing sounded bad."  This evidence, together with the evidence discussed above and the medical testimony that a hydrocodone overdose could cause similar symptoms observed by Morris, constitutes substantial circumstantial evidence that Morris knew Phillips gave the child Tussionex while in his custody.

We also find there is substantial circumstantial evidence that Morris assisted or facilitated Phillips in committing child abuse or neglect. *See Smith*, 359 S.C. at 491, 597 S.E.2d at 894 (defining "aid and abet" as to "[h]elp, assist, or facilitate the commission of a crime" (citation omitted) (alteration by court)). Morris testified he retrieved the Tussionex for Phillips, who "had a hard time reaching it" due to its placement in the closet, on Friday and Saturday. We find there is evidence that Morris's action enabled Phillips to administer the medication to the child. Additionally, the record supports a finding that Morris assisted Phillips in causing further harm to the child by not seeking medical care, although the child's symptoms were severe enough to warrant Morris calling DSS for a replacement Medicaid card and telling the child's mother to take the child to the doctor. *See State v. Smith*, 391 S.C. 353, 366, 705 S.E.2d 491, 498 (Ct. App. 2011) (stating defendant's failure to seek medical care when he knew the child was abused is evidence of aiding and abetting homicide by child abuse). The State presented evidence that if the child received medical treatment Sunday night, or any time before, he would have lived. Finally, Morris failed to disclose to the child's mother, the first responders, or the hospital staff that the child received multiple doses of Tussionex. A jury could reasonably infer that his failure to disclose this information demonstrates his guilty knowledge and attempt to cover-up the crime. We find this evidence was sufficient for the jury to conclude Morris aided and abetted Phillips in giving the child Tussionex and in failing to seek medical care.

For these reasons, the trial court's decision to deny Morris's directed verdict motion is **AFFIRMED.**

**FEW, C.J., PIEPER and KONDUROS, JJ., concur.**